IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES A. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:16-cv-01330-JDB-cgc |
| | ) | |
| PAUL THOMAS, DAVID SAFFELL, | ) | |
| and TOM WITHERSPOON, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DISMISSING CLAIMS,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

INTRODUCTION AND PRELIMINARY MATTERS

On May 5, 2016, James A. Williams, Barry D. Mathias, Timothy G. Coffman, and Richard L. Casey, Jr., filed a pro se complaint under 42 U.S.C. § 1983 related to their confinement at Gibson County Correctional Center ("GCCC") in Trenton, Tennessee. (Docket Entry ("D.E.") 1.) The complaint was docketed in case number 1:16-cv-01091-JDT-cgc. In an order entered March 17, 2017, United States District Judge James D. Todd severed the inmates' claims and directed the Clerk of Court to open new civil actions for Coffman, Casey, and Williams. (D.E. 6.) Pursuant to the Court's order, this matter was opened with Williams as the sole Plaintiff. On May 24, 2017, Judge Todd granted Plaintiff's request to proceed *in forma pauperis* and assessed the civil filing fee in accordance with the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b).

(D.E. 14.) On October 23, 2017, Williams filed an amended complaint (D.E. 16) and, on February 28, 2018, this action was reassigned to the undersigned (D.E. 18; *see* Admin. Order 2018-09.)

The Clerk of Court shall record the Defendants as Paul Thomas, Gibson County sheriff; David Saffell; and Tom Witherspoon, Gibson County mayor.

Williams sues the Defendants in their official and individual capacities. He requests nominal, compensatory, and punitive damages, with the latter to be assessed solely against Saffell.

## SCREENING STANDARD

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In determining whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's well-pleaded factual allegations as true and then decides whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations

"are not entitled to the assumption of truth" and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), factual allegations must make a "'showing,' rather than a blanket assertion, of entitlement to relief," *Twombly*, 550 U.S. at 555 n.3.

"Pro se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612-13 (6th Cir. 2011) (affirming dismissal of pro se complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'").

## PLAINTIFF'S CLAIMS AND ANALYSIS

*Section 1983 Generally.*

> Title 42 U.S.C. § 1983 provides:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under the statute, a plaintiff must allege two elements: "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person

acting under the color of state law." *Winkler v. Madison Cty., Ky.*, 893 F.3d 877, 890 (6th Cir. 2018), *reh'g en banc denied* (July 31, 2018).

*Official Capacity Claims.*

Plaintiff's claims against the Defendants in their official capacities are construed as municipal capacity claims against their employer, Gibson County (the "County"). *See Shelby v. Tenn.*, No. 2:17-cv-02605-TLP-tmp, 2019 WL 1519312, at *2 (W.D. Tenn. Apr. 8, 2019) (in screening pro se complaint against individual defendants employed by municipality in their official capacities, court construed claims as against the local government itself, even though municipality was not a named defendant); *Mathias v. Thomas*, No. 1:16-cv-01091-JDT-cgc, 2019 WL 419290, at *2-3 (W.D. Tenn. Feb. 1, 2019) (pro se prisoner plaintiff's official capacity claims against individual defendants, including GCCC employees, construed as against Gibson County); *see also Williams*, 631 F.3d at 383 (pro se complaints are to be liberally construed). "A municipality or other local government may be liable under [§ 1983] if the governmental body *itself* subjects a person to a deprivation of [constitutional] rights or *causes* a person to be subjected to such deprivation." *Richmond v. Huq*, 885 F.3d 928, 948 (6th Cir. 2018) (emphasis added) (internal quotation marks omitted), *reh'g en banc denied* (May 17, 2018). "A municipality may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Stanfield v. City of Lima*, 727 F. App'x 841, 851 (6th Cir. 2018) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). To demonstrate municipal liability, a plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [his] particular injur[y] [was] incurred due to execution of that policy." *Morgan v. Fairfield Cty., Ohio*, 903 F.3d 553, 566 (6th Cir. 2018) (quoting *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)), *cert. denied,* ___ S. Ct. ___, 2019 WL 266871 (U.S. Mar. 25, 2019).

Williams fails to allege a municipal policy or custom of the County that deprived him of a constitutionally protected right. As he has, therefore, failed to state a claim against any Defendant in his official capacity, those claims are dismissed. The Court will note in the following discussion of Plaintiff's individual capacity claims any instance in which the inmate attempts to describe a policy in place related to his claim and why his allegations are insufficient to pass constitutional muster.

*Individual Capacity Claims Against Thomas and Witherspoon.*

The prisoner does not allege that Thomas or Witherspoon personally acted against him in any way. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. All claims alleged against these Defendants in their individual capacities are therefore dismissed.

*Discrimination Claim.*

With respect to this claim, Williams contends he requested a prison job at GCCC that would allow him to "acquire jail work credits so that he could be released sooner." (D.E. 16 at PageID 162.) He avers that Saffell denied his numerous requests for employment because he takes the prescription medication Amitriptyline, a drug used to treat depression. According to Plaintiff, Saffell prohibited any inmate taking a psychiatric medication from having a prison job and had "taken all jobs away from inmates that will not refuse taking these medication[s]." (*Id.* at 162-63.) Williams claims that Saffell

5

detailed this policy in a memorandum dated June 30, 2016.[1]  The prisoner submits that Saffell followed this self-imposed policy and denied him the opportunity to earn jail work credits even after he voluntarily stopped taking the medication.

Plaintiff has failed to state a claim regarding the denial of a prison job.  As noted above, to state a claim under § 1983, he must allege the violation of a constitutional right.  However, there is no constitutional right to prison employment or to a particular prison job.  *Jewell v. Leroux*, 20 F. App'x 375, 377 (6th Cir. 2001) (citing *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)).  Moreover, the Tennessee statute allowing inmates to earn sentence credits through work specifically provides there is no right to those credits.  *See* Tenn. Code Ann. § 41-21-236(a)(2)(D); *Miller v. Campbell*, 108 F. Supp. 2d 960, 966 (W.D. Tenn. 2000); *see also Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992) (Ohio statute created no constitutionally protected interest in earning sentence reduction credits through work assignments).  Even if Saffell denied him a job because he took certain medication, Williams has no protected right to that employment and cannot state a due process or equal protection claim based on Saffell's denial.  *See Pointer v. Scott*, No. 3:17-cv-01591, 2018 WL 2431633, at *4 (M.D. Tenn. May 30, 2018), *report and recommendation adopted*, 2018 WL 3020455 (M.D. Tenn. June 18, 2018) (as inmate plaintiff had no property right or liberty interest in a particular prison job, his allegation that he was wrongfully terminated from jail position because of discrimination based on race could not stand).

---

[1] The Plaintiff did not submit a copy of the memorandum to the Court.

*Claims Involving Mail and Access to News Outlets.*

The inmate asserts that outgoing mail was unreasonably read and censored by GCCC officials and that all prisoners at the facility were denied access to news outlets in the form of newspapers, news publications, television, and radio. Plaintiff cannot, however, bring claims on behalf of any inmate other than himself. The role of the federal court is a limited one. Thus, a plaintiff may not invoke its jurisdiction "unless he can show a personal stake in the outcome of the controversy." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (internal quotation marks omitted). "A federal court is not a forum for generalized grievances, and the requirement of such a personal stake ensures that courts exercise power that is judicial in nature." *Id.* (internal quotation marks omitted). One of the three elements of standing to initiate an action in the federal courts is that the plaintiff must have suffered "an injury in fact"—an "invasion of a legally protected interest" which is "concrete and particularized." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992)). The injury must "affect the plaintiff in a personal and individual way." *Id.* (citing *Lujan,* 504 U.S. at 560 & n.1) (alteration omitted). Unless a plaintiff suffered an actual injury, he "was not the aggrieved party, [and] he lack[s] standing" to sue. *Percival v. McGinnis*, 24 F. App'x 243, 246 (6th Cir. 2001). Williams does not allege that any of *his* mail was unreasonably read or censored or that he suffered any actual injury as a result of GCCC's policies regarding outgoing mail. Accordingly, he has failed to state a claim on that issue.

In contrast, Plaintiff does assert that he personally suffered an injury in being denied access to news outlets. He is correct that inmates retain a First Amendment right to receive

7

mail, including news publications, subject to legitimate penological interests. *See Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996). He fails, however, to point to any named defendant who was responsible for the alleged deprivation. Nor does he maintain that GCCC maintained a policy of prohibiting inmates from reading, listening to, or watching news stories. As previously noted, Williams cannot sue on behalf of other inmates. His only allegation of an injury he personally suffered is his broad claim that "[t]he Defendants are also denying the Plaintiff news or a chance to know what the current events are." (D.E. 16 at PageID 167.) This conclusory statement fails to describe any action by any named defendant who violated his constitutional rights. Absent factual support, he fails to state a First Amendment claim.

*Claim Concerning Legal Materials.*

Williams avers that, at the time he drafted his complaint, the jail had insufficient legal materials to assist inmates in preparing pleadings and accessing the courts. Again, he is correct that prisoners have a constitutional right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821-22 (1977) (citing *Ex parte Hull*, 312 U.S. 546 (1941)). To have standing to pursue a First Amendment claim that he was denied such access, however, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001); *see Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (per curiam). It is not enough that an inmate establish "that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Rather, he must "go one step further and demonstrate

that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* Williams does not allege that the legal resources within the prison restricted his ability to file a complaint, "hindered his efforts" to pursue his claims, or in any way affected his case.

*Strip Search Claims.*

Plaintiff complains that GCCC officers unreasonably and routinely conducted group strip searches of the inmates in his pod based on the suspicion that minor infractions such as tattooing or smoking were taking place among a few prisoners. He also contends that prisoners who were showering or being strip searched could be viewed by female jail employees from their workstations.

As with some of his previous claims, Williams lacks standing to sue on behalf of any inmate but himself. His only allegation pertaining to a search he personally endured is that he "was strip-searched 3 times within a week for tobacco and tattooing equipment." (D.E. 16 at PageID 173-74.)

"[A] strip search, by its very nature, constitutes an extreme intrusion upon personal privacy." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013). Nevertheless, "[s]trip searches are not per se unconstitutional under the Fourth Amendment." *Long v. Henry Cty. Jail*, No. 1:17-cv-01141-JDB-cgc, 2018 WL 4839088, at *2 (W.D. Tenn. Oct. 4, 2018) (citing *Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010) (per curiam)). To determine if the strip search in question was constitutionally unreasonable, the Court must balance "the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559

(1979). "[A] regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" *Florence v. Bd. of Chosen Freeholders of the Cty. of Burlington*, 566 U.S. 318, 326 (2012) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Though in some cases three strip searches over the course of one week could be constitutionally impermissible, Williams has failed to allege how any defendant in this matter actually violated his rights. He does not aver any specific unreasonable action—or any action at all related to the strip searches—by any named defendant during the searches in which he was involved. He acknowledges the searches were not random but were in response to a belief that an inmate or inmates possessed contraband. He also does not allege that he personally was viewed during a strip search by a female officer; he states only that female employees are able to see searches via cameras if they are working in the facility's control tower. Although Williams submits that he experienced these searches on more than one occasion, he does not claim there was a policy or custom in place that required or encouraged large-scale searches at GCCC. *See Jackson*, 393 F. App'x at 355 (citing *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 43 (1995)) (inmate's official capacity Fourth Amendment strip search claim against jail employee, as construed to be a claim against his municipal employer, could not stand in light of his failure to point to a policy or custom requiring or encouraging searches of the type he complained of).

*Forced Violation of Jail Policy.*

Williams maintains that Saffell ordered him to violate jail policy by undressing to his underwear and standing in an area of the jail where inmates must be fully clothed.

While he and approximately twenty-three other inmates stood "semi-nude," a female officer photographed their tattoos. (D.E. 16 at PageID 176-77.) In response to a complaint filed with respect to Saffell's conduct, Chief Deputy Danny Lewis acknowledged GCCC policy had been violated.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1094 (6th Cir. 2019), *reh'g en banc denied* (Mar. 21, 2019). The Court must determine if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and, if so, whether the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The conditions of a prisoner's confinement may be considered cruel and unusual under the Eighth Amendment when they deprive the inmate of "the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). In the context of a claim of sexual harassment, courts have consistently held that alleged sexual harassment by a prison official, without any contact or touching of the inmate, does not amount to a constitutional

11

violation. *See White v. Brown*, No. 1:07-cv-1154, 2007 WL 5253981, at *2 (W.D. Mich. Dec. 10, 2007) (report & recommendation) (citing cases).

Williams' allegation relative to being photographed in his underwear by a female officer does not satisfy the objective component of an Eighth Amendment claim. *See Smith v. Hatton*, Case No. 17-04030 BLF (PR), 2018 WL 6025608, at *7 (N.D. Cal. Nov. 15, 2018) (concluding that inmate's allegations that he was photographed in his boxer shorts by female officer were objectively insufficiently serious to violate Eighth Amendment); *Johnson v. City of Kalamazoo*, 124 F. Supp. 2d 1099, 1106 (W.D. Mich. 2000) (finding inmates' allegations that they were confined in their underwear for hours, in view of female officers watching via video surveillance, objectively insufficient to state constitutional violation). Moreover, his contention that he was forced to stand in a restricted area fails to state a claim. Even if Saffell's actions led to a violation of jail rules by the Plaintiff, the violation of a prison regulation is not actionable under § 1983. *See Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) ("Merely failing to follow a particular administrative rule does not constitute a violation of the constitution.").

*Exposure While Showering.*

The inmate alleges that in J-pod, where he was housed, there was no shower curtain and female employees could see directly into the shower when they are in a section of the prison between pods. Plaintiff does not assert there were any deliberate or malicious acts behind the sightings. *Compare Kent v. Johnson*, 821 F.2d 1220, 1227 (6th Cir. 1987) (reversing dismissal of plaintiff's claim that female prison guards had viewed him in

shower "at close range and for extended periods of time, to retaliate against, punish and harass him for asserting his right to privacy"), *with Smith v. Chrans*, 629 F. Supp. 606, 611 (C.D. Ill. 1986) (dismissing claims that inmates had been viewed "in conditions of undress and performing toilet functions" because evidence showed no "malicious motivations for the sightings, the deliberate harassment of the plaintiffs . . ., or the deliberate or intentional infliction of humiliation and degradation," and the sightings "were occasional and almost inadvertent"). In addition, Williams again fails to aver that he personally was viewed by a female officer while he was showering, that there is a policy for female employees to watch inmates shower, or that one of the defendants is responsible for the alleged conditions.

For the reasons discussed above, Williams' complaint is subject to dismissal in its entirety for failure to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a sua sponte dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a sua sponte dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that

13

cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that leave to amend is not warranted.

In conclusion, the Court DISMISSES Plaintiff's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED.

In accordance with 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Williams in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if the inmate nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA. Therefore,

Williams is instructed that, if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in the PLRA and *McGore* by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by the Plaintiff, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This strike shall take effect when judgment is entered. *See Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk of Court is DIRECTED to prepare a judgment.

IT IS SO ORDERED this 29th day of April 2019.

    s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE